UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TOSHA ESTERS, on behalf of JORDAN O'MALLEY, a minor,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**MICHAEL J. ASTRUE,**[1]<br>**Commissioner of the**<br>**Social Security Administration,**<br><br>      **Defendant.** | NO. CV 06-00695-MAN<br><br>MEMORANDUM OPINION AND ORDER |

Tosha Esters filed this action on behalf of her minor child, Jordan O'Malley (hereafter "Plaintiff"), on February 10, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claims for supplemental security income ("SSI"). All parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on November 20, 2006, in which: Plaintiff seeks an

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

order reversing the Commissioner's decision and remanding for the payment of benefits or, alternatively, for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff's mother filed an application for SSI disabled child's benefits on Plaintiff's behalf on March 21, 2001 ("First Claim"). (Administrative Record ("A.R.") 69-71.) Plaintiff was born on December 20, 1995. (A.R. 69.) In her application, Plaintiff claims that she has been disabled since March 27, 2000, due to attention deficit hyperactivity disorder - overactive behavior, and asthma. (A.R. 39, 69.)

The Commissioner denied Plaintiff's First Claim initially and upon reconsideration. On July 6, 2001, Plaintiff timely filed a request for hearing with respect to her First Claim, and on June 7, 2002, a hearing was scheduled before Administrative Law Judge Kalei Fong ("ALJ Fong"). On September 10, 2002, ALJ Fong issued an Order of Dismissal regarding Plaintiff's First Claim based on Plaintiff's failure to appear at the hearing. A second application for SSI was filed on Plaintiff's behalf on October 31, 2002 ("Second Claim"), following ALJ Fong's dismissal of Plaintiff's First Claim. Plaintiff's Second Claim was granted by the Commissioner on March 13, 2003. (A.R. 39.)

Thereafter, on September 19, 2003, the Appeals Council granted

review of ALJ Fong's Order of Dismissal regarding Plaintiff's First Claim. The Appeals Council issued an order of remand vacating ALJ Fong's order and directing further proceedings with respect to the First Claim, based on its finding that Plaintiff had shown good reason for not appearing at the hearing, because both the notice and order to show cause order were sent to Plaintiff's prior address. (A.R. 38.)

On January 14, 2004, Plaintiff and her mother, who were represented by counsel, appeared and testified at a hearing regarding Plaintiff's First Claim before Administrative Law Judge Alexander Weir ("ALJ"). (A.R. 629-91.) At the outset of the hearing, the ALJ stated to the Plaintiff's representatives:

> ALJ: ... I have a note that you filed a subsequent application [*i.e.,* Plaintiff's Second Claim]. Well, here's the problem. I have to decide whether or not the [Plaintiff] is disabled currently and previously.
>
> ATTY: Okay.
>
> ALJ: In order to do that, I'm going to have to reopen and revise the determination that was made in connection with that other application [Plaintiff's Second Claim]. So, if you want to proceed with this case [regarding Plaintiff's First Claim], then you take it, make it, I'll make a determination as to whether [Plaintiff] is disabled or not. If you were to withdraw the request for hearing in this case [the First Claim], I could dismiss this case and you would have no effect

on your current benefits on that [the Second Claim].  Do you
want to take a moment to consider that?

(A.R. 637.)  Plaintiff's representative elected to proceed with the hearing.[2]  (A.R. 638.)

On July 14, 2004, the ALJ denied Plaintiff's First Claim and, having reopened the Second Claim, found that Plaintiff was not entitled to the receipt of benefits awarded as the result of her Second Claim. The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 38-50, 6-8.)

---

[2]  Plaintiff's representatives were advised clearly that the award of benefits on Plaintiff's Second Claim would be reopened if the appeal on Plaintiff's First Claim was pursued. (A.R. 637.) There is no basis in the record on which Plaintiff's counsel may legitimately claim they did not understand that pursuit of Plaintiff's First Claim could jeopardize Plaintiff's continued receipt of benefits awarded through her Second Claim.  The Court finds the following argument, which is repeatedly advanced in Plaintiff's portion of the Joint Stipulation, to be wholly unpersuasive, if not disingenuous:

> At the hearing, the ALJ informed plaintiff and her attorney that if they would agree not to pursue the February 23, 2001, application for disability, i.e., withdraw the appeal on the first application, the ALJ would find that Jordan continues to be disabled based on the subsequent application of October 31, 2002, upon which she had already been found disabled by DDS and was receiving disability benefits at the time of the hearing. Thus, it seems the ALJ was satisfied that Jordan met SSA's disability criteria at least as of the date of her second application. However, in his decision, the ALJ found that Jordan is not disabled at all, not even from October 31, 2002, the date of her subsequent application. This appears to be inconsistent.

(Joint Stipulation, p. 6, lines 20-28; see also p. 2, line 25 - p. 3, lines 1-9; p. 34, lines 20-28.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his July 14, 2004 written decision, the ALJ found that Plaintiff was born on December 20, 1995, and, at the time of the decision, was eight years old and attending elementary school in a second grade special education class. (A.R. 49.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (*Id.*) The ALJ further found that Plaintiff had "severe" impairments, consisting of an attention deficit hyperactivity disorder and asthma, but that Plaintiff did not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4 (the "Listings") pursuant to 20 C.F.R. § 416.924(d). (*Id.*)

The ALJ found that Plaintiff did not have an "extreme" limitation in any domain of functioning or a "marked" limitation in two domains of functioning, and that Plaintiff's impairments did not functionally equal the severity of a listed impairment pursuant to 20 C.F.R. § 416.924(d)(2) and 20 C.F.R. § 416.926a. (A.R. 49.) In addition, the ALJ found that Plaintiff's subjective complaints were "considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision." (*Id.*) Accordingly, the ALJ found that Plaintiff was not disabled according to 20 C.F.R. § 416.924(d). (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine

whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  *Id*. at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two issues.  First, Plaintiff contends that the ALJ's decision is not based on substantial evidence.  Second, Plaintiff

contends that the ALJ failed to develop the record fully and properly. (Joint Stip. at 4.) The Court finds that these two issues substantially overlap and thus treats them together in its analysis.

**A.  The Record Needs To Be Developed Further To Clarify Dr. Lawrence Braslow's Assessment Of Plaintiff And To Incorporate Any Additional Evidence Submitted In Support Of Plaintiff's Second Claim.**

The following definition of disability governs the determination of Plaintiff's claim:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). An impairment meets the "marked and severe functional limitations" requirement if it meets, medically equals, or functionally equals an impairment set forth in the Listings. 20 C.F.R. § 416.924(d).[3]  Thus, a child claimant must show that her

---

[3]  20 C.F.R § 416.924 sets out a three-step sequential evaluation process for childhood disability claims. The first step is to determine whether or not the claimant is engaging in substantial gainful activity. If not, the second step is to determine whether the child's impairments are severe. At step three, a child will be found to be disabled, if he

impairment meets, medically equals, or functionally equals an impairment described in the Listings in order to be awarded benefits. *See* 20 C.F.R. §§ 416.911 and 416.924(d)(1).

Plaintiff was evaluated under Listing 112.11 pertaining to attention deficit hyperactivity disorders, which is met where there are:

A.   Medically documented findings *of all three* of the following:

1.   Marked inattention; and

2.   Marked impulsiveness; and

3.   Marked hyperactivity;

AND

B.   ... for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Part 404, Subpart P, Appendix 1 (2004) (emphasis added).

At the time of the ALJ's decision, under Listing 112.02(B)(2),

---

or she has an impairment(s) which meets or medically equals in severity the criteria for an impairment set forth in the Listing in Appendix 1 of subpart P of the Commissioner's disability regulations, 20 C.F.R., Part 404, or if the impairment(s) is (are) functionally equal in severity to a listed impairment.

8

children ages three to 18 were required to exhibit at least two of the following:

    a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

    b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

    c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

    d. Marked difficulties in maintaining concentration,

1        persistence, or pace.

3  20 C.F.R. Part 404, Subpart P, Appendix 1 (2004).

5        The ALJ concluded that "[t]here is no evidence of functional
limitations of such severity as required by the 'B' criteria of section
112.11 (112.02B)." (A.R. 40.) In discussing the evidence supporting
this conclusion, the ALJ cited the August 20, 28, and 29, 2002 opinions
of Dr. Lawrence Brawlow, Plaintiff's treating doctor, stating:

> A report from Dr. Lawrence Braslow dated August 20, 2002
> indicates that [Plaintiff's] condition meets the "A" portion
> of listing 112.02 including marked inattention, marked
> impulsiveness, and marked hyperactivity. He also indicates
> the presence of impairment in age-appropriate social
> functioning, as well as deficiencies of concentration,
> persistence or pace (Exhibit 9F/1-3). However, as of that
> date, he noted "moderate" limitation in
> cognitive/communicative development, no evidence of limitation
> in motor development, "moderate" limitation in social
> development, "moderate" limitation in personal development and
> "extreme" impairment of concentration, persistence or pace
> when not on medication (Exhibit 9F/4-9). I find, therefore,
> that [Plaintiff] has a moderate limitation only in the area of
> concentration, persistence or pace as the evidence shows much
> improvement with medication.

(A.R. 40-41.)

Plaintiff contends that, in finding that she did not meet Listing 112.11, because there was no evidence of functional limitations of such severity as required by the "B" criteria of section 112.11 (112.02B), the ALJ improperly interpreted Dr. Braslow's findings. (Joint Stip. at 7.)

In his August 29, 2002 Diagnosis, Dr. Braslow found that Plaintiff exhibited "marked inattention," "marked impulsiveness," and "marked hyperactivity." (A.R. 324.) In addition, he found that Plaintiff exhibited "marked impairment in age-appropriate social functioning," noting that Plaintiff was "impulsive, 'bossy,' [had] problems sharing [and] waiting turns, [and] maintaining age appropriate social interactions" and had "deficiencies in concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner," noting that Plaintiff was "hyper" and had "limited concentration [and] require[d] structure [and] redirection even on meds." (A.R. 325-26.) In an August 20, 2002 report, Dr. Braslow noted that Plaintiff had "moderate" limitations in social development, noting that her "[hyperactivity] impairs social devel[opment]"; she has "moderate" limitations in personal development, noting academic, social impairment, and limiting personal development; and she has "extreme" limitations in concentration, persistence, or pace "when not on medication." (A.R. 330-32.) In response to a question requesting him to "[d]escribe how each checked factor in section 'B' above effects the child's ability to function in any other aspect of the child's life not noted in subpart 'C' [and] [s]ummarize the evidence that supports your descriptions of the effects of these factors," Dr. Braslow noted that "medication helps; there is residual impairment not usually responsive

to [medication] effecting learning and social skills." (A.R. 332.)

Dr. Braslow's reports are unclear and somewhat inconsistent. Although he noted in his second report that Plaintiff's limitations on concentration, persistence, or pace were "extreme" when she was "not on medication," he did not specify the extent of those limitations when she was on medication. If Dr. Braslow's ultimate conclusion is that Plaintiff has "marked" impairment in her social functioning and concentration, persistence, and pace, *even when she takes prescribed medication*, she would have met the requirements for Listing 112.11. However, neither report provides sufficient information to reach this conclusion. Furthermore, his August 20 report, which suggests that she has only "moderate" social impairment, seems at odds with his August 29 report, which indicates that she has "marked" impairment in age-appropriate social functioning.

Defendant's contention -- that the ALJ properly found that Dr. Braslow's reports could be interpreted as indicating Plaintiff had only "moderate" limitations for purposes of the "B" criteria when she was on medication -- is not persuasive. Dr. Braslow's report nowhere states that the "marked" limitations he found in age-appropriate social functioning were only present when Plaintiff was not taking prescribed medication. (A.R. 324-26.) Furthermore, the record indicates that Plaintiff's medication wears off during the course of the day, causing her to become far less manageable, and far more limited in age-appropriate functioning, in many respects. (A.R. 192 -- January 11, 2002 report of Karina Lopez, Plaintiff's elementary school teacher, stating: "[Plaintiff] comes to school under medication. I have been

able to work with [Plaintiff] when her medication has worn off. It is very difficult for her to concentrate and virtually impossible to get any academic work completed.")

Development of the record is necessary to have Dr. Braslow clarify his opinion as to whether Plaintiff met, and would continue to meet the "B" criteria for Listing 112.11, even if she took, and continues to take, appropriate medication.[4] *See* 20 C.F.R. § 416.912(e)(duty to re-contact treating physician); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)(requirement in 20 C.F.R. § 416.912(e) that the Commissioner re-contact treating sources is triggered when the information from the treating sources is inadequate to make a determination regarding disability). It is well-established that the ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel. *See, e.g.,* Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993).

In addition, to the extent that additional records were submitted in connection with Plaintiff's Second Claim and were not considered by the ALJ in rendering his decision at issue, such records should be incorporated into the record and considered by the ALJ on remand. The determination of whether Plaintiff is disabled must be made based on a fully developed and complete record.

---

[4] Because, as discussed above, the proper resolution of this issue may be dispositive of Plaintiff's request for benefits, the Court does not reach Plaintiff's arguments that her impairments medically equal or are the functional equivalent of a listed impairment. (*See* Joint Stip. at 18, 20.)

**B.   On Remand, The ALJ Must Consider *All* Relevant Evidence, Including The Testimony Of Plaintiff's Mother.**

Plaintiff contends that the ALJ erred in not explaining the weight that he placed on the descriptions of Plaintiff's symptoms provided at the hearing by Tosha Esters, Plaintiff's mother. (Joint Stip. at 25.) In discussing Ms. Esters's testimony, the ALJ stated:

> I find that the record includes evidence which suggests that [Plaintiff's] mother has exaggerated the child's symptoms and limitations. For example, as noted previously, she reported to the psychological examiner in May 2001 that [Plaintiff] "chases her brother with knives" (see Exhibit 3F). There is nothing in the record to support this allegation. She reported to the pediatric examiner in February 2003 that [Plaintiff] required multiple emergency room visits for her asthma (subsequent file), but there is no evidence to support this allegation. She testified at the hearing that [Plaintiff] claims that a man tells her to do things and to hurt others and herself, and this was characterized at the hearing as "psychotic." However, when questioned, [Plaintiff] states that this is only a shadow which comes only at night. This is supported by Exhibit 10F and is nowhere characterized as "psychotic."

(A.R. 46.)

To the extent the ALJ dismissed Ms. Esters' comment that Plaintiff

"chases her brother with knives" and is "psychotic" as unsupported by the record, it appears that the ALJ may have made an unwarranted negative credibility finding regarding Ms. Esters' testimony. Certainly, the record reflects substantial evidence indicating that Plaintiff was observed at the Los Angeles Child Guidance Clinic ("LACGC") to be both verbally and physically aggressive with the other children there.[5]  Further, the ALJ appears to dismiss too easily the reports by Ms. Esters that "a [non-existent] man tells [Plaintiff] to do things and hurt others and herself," as "only a shadow which comes only at night."[6]  (A.R. 46.)  Plaintiff testified at length about the "man" or "shadow" that talked to her and told her to hurt herself and others, describing him as "shadows of black" and "a man that I always see" when he "comes at dark time."  (A.R. 688; *see also* A.R. 686-87.)  Additionally, Jordan signed a "Dangerousness Prevention Contract" as a part of her therapy, in which she stated, *inter alia*, that "[i]f the shadow tells me to do something I won't do it."  (A.R. 334.)

---

[5] A.R. 532 -- February 5-9, 2001 LACGC notes, indicating that Plaintiff "became physical[ly] aggressive toward staff" and "scream[ed] and used profanity"; 536 -- January 22-26, 2001 LACGC notes, indicating that Plaintiff "was physically] and verbal[ly] aggressive toward staff"; 539 – January 15-19, 2001 LACGC notes, indicating that Plaintiff was "physically aggressive toward staff"; 549 – December 11-15, 2000 LACGC notes, indicating Plaintiff was redirected for aggressive behavior; 563 – October 23-27, 2000 LACGC notes, indicating that Plaintiff "required physical containment" due to the difficulty controlling her impulses; 579 -- August 28-September 1, 2000 LACGC notes, indicating Plaintiff "was aggressive toward staff (hitting)" and "required physical containment"; 597 -- April 10-14, 2000 LACGC notes, indicating Plaintiff was "physically aggressive towards peers (hitting)"; 620 -- July 17-21, 2000 LACGC notes, indicating that Plaintiff required physical containment.

[6] Similarly, the ALJ appears to mischaracterize the evidence in concluding that Plaintiff "excels at computers" (A.R. 47) based merely on Plaintiff's testimony that she plays Frogger and other computer games (A.R. 674).

Additionally, the record may not be adequately developed regarding the extent to which Plaintiff misses classes due to her asthma condition. The ALJ's assertion that Ms. Esters has overstated Plaintiff's school absences may not be correct, as it appears that Plaintiff's school records for all quarters in any given year may not have been before the ALJ. (See Defendant's portion of Joint Stip., p. 30, lines 11-28, which suggests that, at most, records for various school years were available for only three quarters.) All relevant school records should be obtained and considered on remand.

As this case is being remanded so that the ALJ can reconsider his finding regarding whether Plaintiff meets the requirements of Listing 112.11 and further develop the record, Ms. Esters's testimony should be reconsidered on remand of this case, after further development of the record.

**C.  Remand Is Required.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 28, 2007

                                                 /s/
                                    MARGARET A. NAGLE
                        UNITED STATES MAGISTRATE JUDGE